**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-42-04** |
| **ALEXANDER TELEWODA** | : | |

**GOVERNMENT'S CHANGE OF PLEA MEMORANDUM**

The United States of America, by its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Jessica Rice, Assistant United States Attorney for the District, respectfully submits this change of plea memorandum. A change of plea hearing was held on Monday, May 4, 2026, at 9:00 a.m.

## I. BACKGROUND

On May 28, 2025, defendant Alexander Telewoda was charged along with three co-defendants in a four-count superseding indictment, arising from Telewoda's participation in a scheme to steal thousands of U.S. Treasury checks from a United States Postal Service mail processing center and then resell and ship those stolen checks throughout the country to purchasers who ultimately negotiated the stolen checks at financial institutions. Telewoda was charged with three counts: conspiracy to steal government funds, in violation of 18 U.S.C. § 371 (Count One); theft of government funds, and aiding and abetting, in violation of 18 U.S.C. §§ 641 and 2 (Count Two); and mail theft, and aiding and abetting, in violation of 18 U.S.C. §§ 1708 and 2 (Count Three).

Telewoda has indicated a desire to plead guilty to Counts One through Three of the superseding indictment, pursuant to a guilty plea agreement.

## II. ELEMENTS OF THE OFFENSES

### A. Conspiracy – 18 U.S.C. § 371 (Count One)

To establish a violation of 18 U.S.C. § 371, the government must prove the following elements beyond a reasonable doubt:

1. Two or more persons agreed to commit an offense against the United States;
2. The defendant was a party to or member of that agreement;
3. The defendant joined the agreement or conspiracy knowing of its objective to commit an offense against the United States and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal or objective, to commit an offense against the United States; and
4. At some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.[1]

### B. Theft of Government Funds – 18 U.S.C. § 641 (Counts One and Two)

To establish a violation of 18 U.S.C. § 641, the government must prove the following elements beyond a reasonable doubt:

1. The defendant knowingly embezzled, stole, converted to the defendant's use, or converted to the use of another, money or property of value, with the intention of depriving the owner of the use or benefit of the money or property;
2. The money or property belonged to the United States; and
3. The value of the money or property was more than $1,000.[2]

U.S. Treasury checks qualify as property of value to the United States within the meaning of 18 U.S.C. § 641.[3]

---

[1] Third Circuit Model Criminal Jury Instructions § 6.18.371A.

[2] S3 Modern Federal Jury Instructions-Criminal 23.1.

[3] *See, e.g.*, *United States v. Wylie*, 813 F.2d 1229 (4th Cir. 1987) ("[T]here is no doubt that United States Treasury checks are 'things of value' within the meaning of the statute."); *see*

**C. Mail Theft – 18 U.S.C. § 1708 (Count Three)**

To establish a violation of 18 U.S.C. § 1708, the government must prove the following elements beyond a reasonable doubt:

1. There was mail in a private mail box, at a post office, in a letter box, in a mail receptacle, on a mail route, in an authorized depository for mail matter, or in possession of a letter or mail carrier;

2. The defendant took the mail from the private mail box, post office, letter box, mail receptacle, mail route, authorized depository for mail matter, or letter or mail carrier; and

3. At the time the defendant took the mail, the defendant intended to deprive the owner, temporarily or permanently, of its use and benefit.[4]

**D. Aiding and Abetting – 18 U.S.C. § 2**

To establish a violation of 18 U.S.C. § 2, the government must prove the following elements beyond a reasonable doubt:

1. The principal committed the offense by committing each of the elements of the offense;

2. The defendant knew that the offense charged was going to be committed or was being committed by the principal;

3. The defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal in committing the offense charged and with intent that the principal commit that offense; and

4. The defendant performed an act in furtherance of the offense committed by the principal.[5]

---

*also United States v. Robinson*, 603 F.3d 230 (3d Cir. 2010); *United States v. Davis*, 397 F. App'x 771 (3d Cir. 2010); *United States v. Mukhtaar*, 355 F. App'x 541 (2d Cir. 2009); *United States v. Dimaranan*, 855 F.2d 863 (9th Cir. 1988).

[4] S3 Modern Federal Jury Instructions-Criminal 23.10.

[5] Third Circuit Model Criminal Jury Instructions § 7.02.

## III. MAXIMUM PENALTIES

The statutory maximum penalty for Count One, charging conspiracy to steal government funds, is a term of imprisonment of 5 years, a term of supervised release of 3 years, a fine of $250,000, and a special assessment of $100; for Count Two, charging theft of government funds (and aiding and abetting), a term of imprisonment of 10 years, a term of supervised release of 3 years, a fine of $250,000, and a special assessment of $100; and for Count Three, charging mail theft (and aiding and abetting), a term of imprisonment of 5 years, a term of supervised release of 3 years, a fine of $250,000, and a special assessment of $100.

Thus, the total permissible statutory maximum sentence is a term of imprisonment of 20 years, a term of supervised release of 3 years, a fine of $750,000, and a special assessment of $300. Full restitution of as much as $11,055,414.25 shall be ordered, and forfeiture of $298,973 also may be ordered.

## IV. FACTUAL BASIS FOR THE GUILTY PLEA

If this case were to proceed to trial, the government would introduce evidence to establish the following facts:

The United States Department of the Treasury, Bureau of the Fiscal Service ("BFS"), is responsible for printing and mailing United States Treasury checks to individuals and businesses throughout the United States.[6] BFS operates a facility in Philadelphia, Pennsylvania from which thousands of Treasury checks are mailed out on a daily basis. Treasury checks that are mailed out by BFS but are undeliverable to the intended recipient for any reason are marked "Return to

[6] These Treasury checks represent payments from a large number of federal agencies and include, among many other payments, income tax refunds from the Internal Revenue Service, social security benefit payments from the Social Security Administration, and veterans benefit payments from the Department of Veterans Affairs.

Sender" and sent back to BFS's Philadelphia facility via the United States Postal Service ("USPS"). Treasury checks mailed from, or returned to, BFS's Philadelphia facility are processed at the USPS Philadelphia Processing and Distribution Center ("Philadelphia P&DC"). Co-defendants Saahir Irby and Tauheed Tucker both worked as Mail Processing Clerks at the Philadelphia P&DC between November 2022 and September 2024. In those roles, Tucker and Irby sorted mail passing through the facility and had physical access to mail sorting machines that processed mail sent from and addressed to BFS's Philadelphia facility.

Starting by in or about June 2023, defendant Alexander Telewoda and co-defendants Irby and Cory Scott conspired to steal Treasury checks from the Philadelphia P&DC and then resell those checks via the instant messaging application Telegram to purchasers around the country. To facilitate this scheme, Irby identified mail sorting machines which, at certain times of day, processed large numbers of envelopes containing Treasury checks that had been marked "Return to Sender" and were being returned to BFS's Philadelphia facility. During his shifts, Irby stole bulk quantities of envelopes containing Treasury checks (sometimes hundreds at a time) from the mail bins to which those envelopes had been sorted. Without opening the envelopes, Irby concealed them in a sweatshirt or jacket pocket, or in a backpack. When Irby stole checks, he communicated with Telewoda and Scott via Telegram or iMessage, advising them that he had obtained more checks. Irby then arranged to meet with Telewoda and/or Scott following his shift, and Irby provided them with the stolen Treasury checks in sealed envelopes, in exchange for payment.

Telewoda and Scott advertised the stolen Treasury checks for resale on three Telegram channels that they operated: THE FRANCHISE, SWIPESLAB, and STIMLORD.[7] On those channels, Telewoda and Scott posted images of individual stolen Treasury checks offered for sale, as well as dollar amounts that correlated with the face value of additional (unpictured) Treasury checks also available for purchase. Telewoda and Scott instructed interested buyers to send them a private message via Telegram to coordinate a sale, often charging purchasers 10% of the face value of a stolen check. After receiving payment, Telewoda and Scott mailed the stolen checks to the purchasers who attempted to negotiate them at financial institutions.

Telewoda and Scott worked together to resell the stolen Treasury checks. They engaged in extensive Telegram communications, through which they sent one another images of stolen Treasury checks, discussed pricing for stolen checks, and shared with one another the addresses of purchasers to whom the stolen checks should be mailed. Telewoda and Scott mailed the stolen checks to purchasers through various carriers, including USPS and FedEx, and sent one another tracking details for some of those shipments.

In or about August 2023, Scott and Irby exchanged messages via Telegram discussing how to get co-defendant Tucker (Irby's cousin) involved in the Treasury check theft scheme. In the days that followed, Tucker joined the scheme and began stealing Treasury checks for Telewoda and Scott during his own shifts at the Philadelphia P&DC.

Telewoda and Irby continued to meet in person to exchange Treasury checks for payment through at least August 2024. Irby and Tucker were terminated by USPS on or about September 11, 2024, thereby eliminating their access to Treasury checks passing through the Philadelphia

[7] TELEWODA (Telegram user @YESISWIPE) was an administrator of THE FRANCHISE, while Scott served as an administrator of the SWIPESLAB and STIMLORD channels.

P&DC. During the course of the conspiracy, Telewoda sent several CashApp payments to both Irby and Tucker from his CashApp account (with display name "Empower Investments").

The total face value of Treasury checks stolen during the conspiracy was approximately $84,508,550.61,[8] including several Treasury checks whose individual face value exceeded $1 million. Telewoda received payments totaling at least $162,144.50, primarily through CashApp, in connection with the scheme.

At trial, the government would introduce the following evidence to establish the existence of a conspiracy and Telewoda's role in it: extensive messages between Telewoda and Scott and between Telewoda and Irby, posts to Telewoda's and Scott's Telegram channels, Treasury checks seized during a law enforcement search of Telewoda's residence and vehicle, USPS mail tracking data, video recordings of Tucker and Irby stealing envelopes while on duty at the Philadelphia P&DC, and electronic payment records.

[8] This total is based on (1) the face value of all Treasury checks Telewoda and Scott advertised for sale on Telegram during the course of the conspiracy, plus (2) the face value of all Treasury checks seized from Telewoda's and Scott's residences and/or vehicles (that were issued during the course of the conspiracy). Of this total, $11,055,414.25 in stolen Treasury checks was successfully negotiated at financial institutions. Telewoda also engaged in substantial additional fraudulent conduct after the conspiracy ended, continuing to post another approximately $33 million in stolen checks on THE FRANCHISE channel. More than $3 million in additional stolen checks issued after the conspiracy ended was also recovered during a search of Telewoda's home in June 2025. This relevant conduct, totaling approximately $37,065,464.19, is included in the parties' plea agreement for the purpose of calculating total intended loss.

## V. <u>CONCLUSION</u>

The United States respectfully submits that this summary of evidence provides a factual basis for the guilty plea by defendant Alexander Telewoda to Counts One through Three of the superseding indictment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*<u>/s/Jessica Rice</u>*
JESSICA RICE
Assistant United States Attorney

Dated: May 4, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Government's Change of Plea Memorandum has been served by electronic filing (ECF) upon the following:

Arnold Joseph
Acjoseph8@gmail.com
*Counsel for Defendant Alexander Telewoda*

*/s/Jessica Rice*
JESSICA RICE
Assistant United States Attorney

Dated: May 4, 2026