**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-42-01** |
| **SAAHIR IRBY** | : | |

**GOVERNMENT'S CHANGE OF PLEA MEMORANDUM**

The United States of America, by its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Jessica Rice, Assistant United States Attorney for the District, respectfully submits this change of plea memorandum. A change of plea hearing was held on Tuesday, May 5, 2026, at 10:00 a.m.

## I. BACKGROUND

On May 28, 2025, defendant Saahir Irby was charged along with three co-defendants in a four-count superseding indictment, arising from Irby's participation in a scheme to steal thousands of U.S. Treasury checks from a United States Postal Service mail processing center and then resell and ship those stolen checks throughout the country to purchasers who ultimately negotiated the stolen checks at financial institutions. Irby was charged with all four counts: conspiracy to steal government funds, in violation of 18 U.S.C. § 371 (Count One); theft of government funds, and aiding and abetting, in violation of 18 U.S.C. §§ 641 and 2 (Count Two); mail theft, and aiding and abetting, in violation of 18 U.S.C. §§ 1708 and 2 (Count Three); and mail theft, in violation of 18 U.S.C. § 1708 (Count Four).

Irby has indicated a desire to plead guilty to Counts One through Four of the superseding indictment, pursuant to a guilty plea agreement.

## II. ELEMENTS OF THE OFFENSES

### A. Conspiracy – 18 U.S.C. § 371 (Count One)

To establish a violation of 18 U.S.C. § 371, the government must prove the following elements beyond a reasonable doubt:

1. Two or more persons agreed to commit an offense against the United States;

2. The defendant was a party to or member of that agreement;

3. The defendant joined the agreement or conspiracy knowing of its objective to commit an offense against the United States and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal or objective, to commit an offense against the United States; and

4. At some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.[1]

### B. Theft of Government Funds – 18 U.S.C. § 641 (Counts One and Two)

To establish a violation of 18 U.S.C. § 641, the government must prove the following elements beyond a reasonable doubt:

1. The defendant knowingly embezzled, stole, converted to the defendant's use, or converted to the use of another, money or property of value, with the intention of depriving the owner of the use or benefit of the money or property;

2. The money or property belonged to the United States; and

3. The value of the money or property was more than $1,000.[2]

U.S. Treasury checks qualify as property of value to the United States within the meaning of 18 U.S.C. § 641.[3]

---

[1] Third Circuit Model Criminal Jury Instructions § 6.18.371A.

[2] S3 Modern Federal Jury Instructions-Criminal 23.1.

[3] *See, e.g.*, *United States v. Wylie*, 813 F.2d 1229 (4th Cir. 1987) ("[T]here is no doubt that United States Treasury checks are 'things of value' within the meaning of the statute."); *see*

### C. Mail Theft – 18 U.S.C. § 1708 (Counts Three and Four)

To establish a violation of 18 U.S.C. § 1708, the government must prove the following elements beyond a reasonable doubt:

1. There was mail in a private mail box, at a post office, in a letter box, in a mail receptacle, on a mail route, in an authorized depository for mail matter, or in possession of a letter or mail carrier;

2. The defendant took the mail from the private mail box, post office, letter box, mail receptacle, mail route, authorized depository for mail matter, or letter or mail carrier; and

3. At the time the defendant took the mail, the defendant intended to deprive the owner, temporarily or permanently, of its use and benefit.[4]

### D. Aiding and Abetting – 18 U.S.C. § 2

To establish a violation of 18 U.S.C. § 2, the government must prove the following elements beyond a reasonable doubt:

1. The principal committed the offense by committing each of the elements of the offense;

2. The defendant knew that the offense charged was going to be committed or was being committed by the principal;

3. The defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal in committing the offense charged and with intent that the principal commit that offense; and

4. The defendant performed an act in furtherance of the offense committed by the principal.[5]

---

*also United States v. Robinson*, 603 F.3d 230 (3d Cir. 2010); *United States v. Davis*, 397 F. App'x 771 (3d Cir. 2010); *United States v. Mukhtaar*, 355 F. App'x 541 (2d Cir. 2009); *United States v. Dimaranan*, 855 F.2d 863 (9th Cir. 1988).

[4] S3 Modern Federal Jury Instructions-Criminal 23.10.

[5] Third Circuit Model Criminal Jury Instructions § 7.02.

## III. MAXIMUM PENALTIES

The statutory maximum penalty for Count One, charging conspiracy to steal government funds, is a term of imprisonment of 5 years, a term of supervised release of 3 years, a fine of $250,000, and a special assessment of $100; for Count Two, charging theft of government funds (and aiding and abetting), a term of imprisonment of 10 years, a term of supervised release of 3 years, a fine of $250,000, and a special assessment of $100; and for each of Counts Three and Four, charging mail theft (and, in Count Three, aiding and abetting), a term of imprisonment of 5 years, a term of supervised release of 3 years, a fine of $250,000, and a special assessment of $100.

Thus, the total permissible statutory maximum sentence is a term of imprisonment of 25 years, a term of supervised release of 3 years, a fine of $1,000,000, and a special assessment of $400. Full restitution of as much as $11,055,414.25 shall be ordered, and forfeiture of $72,510 also may be ordered.

## IV. FACTUAL BASIS FOR THE GUILTY PLEA

If this case were to proceed to trial, the government would introduce evidence to establish the following facts:

The United States Department of the Treasury, Bureau of the Fiscal Service ("BFS"), is responsible for printing and mailing United States Treasury checks to individuals and businesses throughout the United States.[6] BFS operates a facility in Philadelphia, Pennsylvania from which thousands of Treasury checks are mailed out on a daily basis. Treasury checks that are mailed

[6] These Treasury checks represent payments from a large number of federal agencies and include, among many other payments, income tax refunds from the Internal Revenue Service, social security benefit payments from the Social Security Administration, and veterans benefit payments from the Department of Veterans Affairs.

out by BFS but are undeliverable to the intended recipient for any reason are marked "Return to Sender" and sent back to BFS's Philadelphia facility via the United States Postal Service ("USPS"). Treasury checks mailed from, or returned to, BFS's Philadelphia facility are processed at the USPS Philadelphia Processing and Distribution Center ("Philadelphia P&DC").

Defendant Saahir Irby worked as a Mail Processing Clerk at the Philadelphia P&DC from August 2021 to September 2024. In that role, Irby sorted mail passing through the facility and had physical access to mail sorting machines that processed mail sent from and addressed to BFS's Philadelphia facility. Irby typically worked overnight shifts.

Starting by in or about June 2023, Irby and co-defendants Cory Scott and Alexander Telewoda conspired to steal Treasury checks from the Philadelphia P&DC and then resell those checks via the instant messaging application Telegram to purchasers around the country. To facilitate this scheme, Irby identified mail sorting machines which, at certain times of day, processed large numbers of envelopes containing Treasury checks that had been marked "Return to Sender" and were being returned to BFS's Philadelphia facility. During his shifts, Irby stole bulk quantities of envelopes containing Treasury checks (sometimes hundreds at a time) from the mail bins to which those envelopes had been sorted. Without opening the envelopes, Irby concealed them in a sweatshirt or jacket pocket, or in a backpack, and then carried the stolen envelopes out of the facility and placed them in his vehicle. When Irby stole checks, he communicated with Scott and Telewoda via Telegram, advising them that he had obtained more checks and often sending Scott and Telewoda images of large stacks of stolen envelopes. Irby then arranged to meet with Scott and/or Telewoda following his shift, and Irby provided them the stolen Treasury checks in sealed envelopes, in exchange for payment. Scott and Telewoda then advertised the stolen checks on Telegram, sold them to other Telegram users (typically for 10%

of their face value), and mailed the checks to those purchasers who then attempted to negotiate the stolen checks at financial institutions.

On or about August 8, 2023, Irby and Scott exchanged messages via Telegram discussing how to get co-defendant Tauheed Tucker—Irby's cousin, who also worked as a Mail Processing Clerk at the Philadelphia P&DC—involved in the Treasury check theft scheme. In the days that followed, Irby and Tucker exchanged Telegram messages discussing how to steal checks from certain mail processing machines within the Philadelphia P&DC and Tucker began stealing Treasury checks for Scott and Telewoda during his own shifts.

Between June 2023 and August 2024, Irby stole large quantities of envelopes containing Treasury checks—which he then provided to Scott and Telewoda who advertised the checks for resale on their respective Telegram channels—while he was on duty at the Philadelphia P&DC on at least 16 separate occasions.

As to the conduct charged in Count Four, in the early morning hours of August 4, 2024, Irby stole a large stack of envelopes containing Treasury checks while working his shift at the Philadelphia P&DC. On the morning of August 7, 2024, Irby met another individual, D.O., in the parking lot of Rivers Casino in Philadelphia. Irby placed the envelopes into D.O's backpack, and then drove away. Shortly thereafter, law enforcement observed D.O. inside his parked vehicle, opening the envelopes while wearing latex gloves. Law enforcement ultimately seized from D.O. a total of 112 envelopes containing U.S. Treasury checks, with a total face value of approximately $248,438.83. USPS tracking data confirmed that those envelopes had been scanned by a sorting machine at the Philadelphia P&DC on the evening of August 3, 2024.

Irby and Tucker were terminated by USPS on or about September 11, 2024, thereby eliminating their access to Treasury checks passing through the Philadelphia P&DC. In total,

Irby received payments of at least $72,510 arising from his theft of Treasury checks. Between June 2023 and May 2024, Scott paid Irby a total of approximately $45,410 across dozens of CashApp and Apple Cash transactions, while Telewoda paid Irby an additional $5,900 via CashApp in June 2023. D.O. paid Irby $3,000 in cash for the August 2024 transaction.[7] The total face value of Treasury checks stolen during the course of the conspiracy was approximately $84,508,550.61,[8] including several Treasury checks whose individual face value exceeded $1 million.

At trial, the government would introduce the following evidence to establish the existence of a conspiracy and Irby's role in it: extensive Telegram messages between the defendants, posts to Scott's and Telewoda's Telegram channels, USPS mail tracking data, USPS timesheets, video recordings of Irby and Tucker stealing envelopes while on duty at the Philadelphia P&DC, video surveillance of Irby and D.O. in the Rivers Casino parking lot, and electronic payment records.

[7] $21,200 in cash ($3,000 of which represented the payment from D.O.) was recovered from Irby's residence in September 2024. Irby has agreed to forfeit these funds pursuant to the parties' plea agreement.

[8] This total is based on (1) the face value of all Treasury checks Scott and Telewoda advertised for sale on Telegram during the course of the conspiracy, plus (2) the face value of all Treasury checks seized from Scott's and Telewoda's residences and/or vehicles (that were issued during the course of the conspiracy). Of this total, $11,055,414.25 in stolen Treasury checks was successfully negotiated at financial institutions. The $248,438.83 in Treasury checks seized from D.O. is included in the parties' plea agreement for the purpose of calculating total intended loss.

## V. CONCLUSION

The United States respectfully submits that this summary of evidence provides a factual basis for the guilty plea by defendant Saahir Irby to Counts One through Four of the superseding indictment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/Jessica Rice*
JESSICA RICE
Assistant United States Attorney

Dated: May 5, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Government's Change of Plea Memorandum has been served by electronic filing (ECF) upon the following:

Jesse Smith
Jesse_Smith@fd.org
*Counsel for Defendant Saahir Irby*

/s/Jessica Rice___________
JESSICA RICE
Assistant United States Attorney

Dated: May 5, 2026